**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Guadalupe 31 Condominium Association,**<br><br>                                          **Plaintiff,**<br><br>                  -against-<br><br>**Mt. Hawley Insurance Company,**<br><br>                                          **Defendant.** | **1:25-cv-04951 (JHR) (SDA)**<br><br>**OPINION AND ORDER** |

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a Letter Motion by Plaintiff Guadalupe 31 Condominium Association ("Plaintiff" or "Guadalupe") to compel Mt. Hawley Insurance Company ("Defendant" or "Mt. Hawley") to produce its underwriter for deposition. (Pl.'s 2/23/26 Ltr. Mot., ECF No. 28.) For the reasons set forth below, Plaintiff's Letter Motion is DENIED.

## BACKGROUND

This is an insurance coverage action brought by Guadalupe against Mt. Hawley. (*See* Am. Compl., ECF No. 3, ¶ 1.) In 2021, Mt. Hawley first issued to Guadalupe a commercial property insurance policy for Guadalupe's condominium building located at 3016 Guadalupe St., Austin, Texas (the "Property"). (*See* Def.'s 2/26/26 Ltr., ECF No. 30, at 1.) After Mt. Hawley first issued its policy, Mt. Hawley retained a company named Afirm to inspect the Property and prepare a survey report. (*See id*.) Afirm issued a report, reflecting a "Survey Date" of November 8, 2021, stating that "[t]he roof of the building showed evidence of weathering, damage or other abnormality that could result in water penetration into the building" and that "[t]o reduce the risk of water damages[,] the roof should be inspected and serviced by a qualified roofing contractor." (Ex. B to

Pl.'s 2/23/26 Ltr. Mot., ECF No. 28-2.) At some point, Guadalupe provided to Mt. Hawley a "Management Report," dated October 22, 2020, from Kentex Roofing Systems, LLC ("Kentex") relating to the roof of the Property. (*See* Pl.'s 2/23/26 Ltr. Mot. at 2; Def.'s 2/26/26 Ltr. at 1; *see also* Ex. A to Pl.'s 2/23/26 Ltr. Mot., ECF No. 28-1.) Annexed to this report is a paid invoice reflecting that Kentex performed the recommendations contained in the report in or about February 2021.[1] (Ex. A to Pl.'s 2/23/26 Ltr. Mot. at PDF p. 11.)

In 2023, Mt. Hawley issued to Guadalupe a commercial property insurance contract bearing policy no. MCP0176014 with dates of coverage from August 8, 2023 to August 8, 2024 (the "Policy"). (Am. Compl. ¶ 10.) One of the "COMMON POLICY CONDITIONS" that is contained in the Policy, in Section D (entitled "Inspections And Surveys") provides, as follows:

1.      We have the right to:

      a.      Make inspections and surveys at any time;

      b.      Give you reports on the conditions we find; and

      c.      Recommend changes.

2.      We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public and we do not warrant that:

      a.      Conditions are safe or healthful;

---

[1] Mt. Hawley represents to the Court that, during discovery in this case, it obtained additional documents regarding the condition of the Property that were dated after Mt. Hawley issued the 2021 policy to Guadalupe but before the storm referenced below, including several Kentex invoices and associated reports, as well as a proposal from Holden Roofing to completely replace the roof at the Property. (*See* Def.'s 2/26/26 Ltr. at 3.)

> b.    The insured property complies with laws, regulations, codes or standards; or
>
> c.    The insured property is free from pre-existing conditions that may impact coverage in the event of a loss.
>
> Any property inspection undertaken by us or on our behalf related to the underwriting process in connection with issuance of any policy is for our information only and does not in any way negate or impair our ability to apply and enforce any and all applicable exclusions, limitations, conditions, or other terms of this policy. It is agreed that neither such property inspection nor any such property inspection report can be used by any insured for any reason after a loss.

(Policy, ECF No. 2-1, at PDF p. 78.)[2] In addition, the Policy contains a "PRE-EXISTING DAMAGE EXCLUSION," which provides as follows:

> We do not cover any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of loss insured under this policy.
>
> The above exclusion shall automatically be removed upon:
>
> a.    The completion of all building repairs; and
>
> b.    Written evidence, signed by a licensed general contractor, stating that such building repairs have been completed.

(*Id*. at PDF p. 109.) Furthermore, the Policy is governed by New York law. (*Id*. at PDF p. 111 ("All matters arising out of or relating to this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflict of law rules).").)

On September 24, 2023, a severe hailstorm perforated the Property's roof membrane, which caused water to penetrate the Property's envelope, damaging the Property's common elements and a number of units (the "Loss"). (Am. Compl. ¶ 12.) Guadalupe promptly notified

---

[2] The Policy is filed on the docket at ECF No. 2-1. Plaintiff recently filed another copy of the Policy at ECF No. 32-1.)

Mt. Hawley of the Loss. (*Id.* ¶ 13.) Mt. Hawley refused to indemnify Guadalupe for the Loss on the basis that the Property's damage was caused by ordinary "wear and tear" or was pre-existing. (*Id.* ¶¶ 3, 20, 23.)

On June 12, 2025, Guadalupe commenced this action by filing its Complaint (Compl., ECF No. 1) and thereafter filed its Amended Complaint on June 13, 2025. (*See* Am. Compl.) In the Amended Complaint, Guadalupe asserts a claim against Mt. Hawley for breach of contract, seeking to recover the cost to restore the Property to its pre-Loss condition. (*Id.* ¶ 26.)

In its Answer to the Amended Complaint, filed on August 8, 2025, Mt. Hawley pled an Eighth Affirmative Defense, stating as follows:

> The Policy does not cover any loss or damage directly or indirectly caused by, resulting from or contributed to by any pre-existing building damage at the time of the loss. See PRE-EXISTING DAMAGE EXCLUSION Endorsement. Mt. Hawley diligently and thoroughly investigated the reported loss and determined that multiple repairs had previously been made to the roof, the roof membrane was in a worn condition and the reinforcing scrim/mat was exposed and unraveling in multiple areas, and the roof was near the end of its useful life. Damage existed that was not caused by the weather event at issue or covered by the Policy.

(Def.'s Ans., ECF No. 13, at 10.)

On September 26, 2025, the Court entered a Case Management Plan setting the deadline for fact discovery as January 30, 2026. (Case Mgt. Plan, ECF No. 21, at 2.) Pursuant to an Amended Case Management Plan, entered on January 12, 2026, at the request of the parties, the deadline for fact discovery was extended to March 24, 2026. (*See* Am. Case Mgt. Plan, ECF No. 26, at 2.)

On February 16, 2026, Guadalupe requested that Mt. Hawley produce its underwriter for deposition. (Pl.'s 2/23/26 Ltr. Mot. at 2.) Mt. Hawley refused to do so, and following a meet-and-confer, Guadalupe filed the Letter Motion now before the Court. (*See id.*) On February 25, 2026, this action was referred to the undersigned for general pretrial purposes, including discovery.

4

(Order of Ref., ECF No. 29.) On February 26, 2026, Mt. Hawley filed its response to Guadalupe's Letter Motion, arguing that Guadalupe's "goal in seeking to compel the deposition of Mt. Hawley's underwriter is to do an end run around the Policy provisions set forth [in Mt. Hawley's letter], which preserve Mt. Hawley's right to rely on Policy exclusions relating to the condition of the property regardless of whether an inspection report is obtained in connection with issuing the [P]olicy[,]" and that "there is no legitimate purpose served by deposing Mt. Hawley's underwriter." (Def.'s 2/26/26 Ltr. at 3.)

On March 1, 2026, the Court entered an Order requiring Guadalupe to file a reply letter no later than March 4, 2026. (*See* 3/1/26 Order, ECF No. 31.) On March 4, 2026, Guadalupe filed its reply letter. (Pl.'s 3/4/26 Reply, ECF No. 32.) On March 6, 2026, the Court held a telephone conference to address Guadalupe's pending Letter Motion.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). As for proportionality, Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 405 (S.D.N.Y. 2018) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)).

**ANALYSIS**

The Court in its discretion finds that the discovery sought by Plaintiff (*i.e.*, testimony by Defendant's underwriter) is not relevant and/or proportional to any claim or defense.

In its Letter Motion, Plaintiff primarily argues that testimony from Defendant's underwriter is relevant to Defendant's Eighth Affirmative Defense, which raises the PRE-EXISTING DAMAGE EXCLUSION, because it is relevant to the preexisting condition of the Property and Mt. Hawley's decision to insure the Property despite knowledge of prior repairs and an inspection regarding the condition of the roof. (*See* Pl.'s 2/23/26 Ltr. Mot. at 4.) In reply, Plaintiff further asserts that the underwriter's testimony may be relevant to other topics, including, *inter alia*, information provided to Mt. Hawley's claims adjusters from the underwriting process during the investigation of the claim (relevant to the issue of breach); the name(s) of witnesses who saw the property's pre-Loss condition; and the valuation of the Property, which Plaintiff contends is relevant to damages. (*See* Pl.'s 3/4/26 Reply at 1-2.)

Plaintiff certainly is entitled to discovery regarding the pre-Loss condition of the Property, which is central to Defendant's Eighth Affirmative Defense. Defendant represents that it already "has produced all of the materials in its underwriting file bearing on the pre-loss condition of the [P]roperty" (Def.'s 2/26/26 Ltr. at 3), including the Afirm report,[3] the October 22, 2020 Kentex report and emails pertaining to those reports contained in Mt. Hawley's underwriting file. (*Id.* at

---

[3] To the extent that Plaintiff relies upon the Afirm report as a basis for seeking testimony from Defendant's underwriter (see Pl.'s 2/23/26 Ltr. Mot. at 2), that reliance is misplaced. The Policy expressly provides that survey reports like the one issued by Afirm "relate only to insurability and the premiums to be charged[,]" that Defendant "do[es] not warrant that . . . [t]he insured property is free from pre-existing conditions that may impact coverage in the event of a loss" and that "[a]ny property inspection undertaken by [it] . . . does not in any way negate or impair our ability to apply and enforce any and all applicable exclusions, limitations, conditions, or other terms of th[e] [P]olicy." (Policy at PDF p. 78.)

2.) During the March 6, 2026 telephone conference, Defendant's counsel further represented that the underwriter never set foot on the Property and the only information the underwriter had regarding the condition of the Property was through the Afirm report and email communications.[4] Because those documents already have been produced, the Court finds that any testimony of Defendant's underwriter regarding the pre-existing condition of the Property would be cumulative and not proportional to the needs of the case.

The Court does not find the cases cited by Plaintiff in support of compelling underwriter testimony (*see* Pl.'s 2/23/26 Ltr. Mot. at 3) to be helpful to Plaintiff. As an initial matter, none of the cases applies New York law. In addition, two of the cases did not address the issue of compelling underwriter testimony, but rather production of documents in the insurer's underwriting file.[5] The other two cases cited by Plaintiff addressed Rule 30(b)(6) testimony or possible testimony from the insurer, not an underwriter deposition.[6] To the extent Plaintiff seeks

---

[4] Defendant's counsel "is an officer of the Court" and "[i]f a statement made by counsel is false, he can be subject to discipline[;] [t]hus, courts often rely upon statements made by counsel." *Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 7028922, at *3 (S.D.N.Y. Nov. 29, 2020) (citing cases).

[5] In *Heartland World Ministries v. Cent. Mut. Ins. Co.*, No. 3:13-CV-02337 (RHT), 2014 WL 12531160 (N.D. Tex. Feb. 20, 2014), the court ordered the production of the insurer's underwriting file in circumstances where leaks were caused by pre-existing damage, among other things. *See id.* at *1. In *Providence Church, Inc. v. GuideOne Ins.*, No. 06-CV-01201 (TDG), 2008 WL 11338501 (W.D. Okla. Jan. 18, 2008), the court ordered the production of the insurer's claim file in connection with a bad faith claim, but no testimony from an underwriter was requested or compelled. *See id.* at *3. Here, as noted above, Defendant represented that it already has produced all the documents in its underwriting file regarding the pre-Loss condition of the Property. (*See* Def.'s 2/26/26 Ltr. at 3.)

[6] In *Islamic Servs. Found. v. Philadelphia Indem. Ins. Co.*, No. 3:25-CV-01333 (BM), 2026 WL 249016 (N.D. Tex. Jan. 30, 2026), the court ordered the production of the insurer's underwriting files, as well as testimony from a Rule 30(b)(6) witness about, among other things, the underwriting process, in connection with a bad faith claim. *Id.* at *3-4. In *Ferrao v. Ace Ins. Co. of the Midwest*, No. 2:20-CV-00657 (JLB) (KCD), 2022 WL 2757484 (M.D. Fla. July 14, 2022), the court ordered the insurer to produce documents from the underwriting file regarding the pre-loss condition of the subject property's roof, and noted that a Rule 30(b)(6) deposition of the insurer might be appropriate if there was information in the underwriting file regarding the pre-loss condition of the property. *Id.* at *2.

to confirm the contents of the underwriting file regarding the pre-Loss condition of the Property, Defendant has offered to produce a Rule 30(b)(6) witness on that topic.

Separately, Plaintiff is not entitled to underwriter testimony (or other discovery) regarding Mt. Hawley's decision to insure the Property,[7] which the Court finds is not relevant to any claim or defense in this action. Under New York law, which controls here, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Morgan Stanley Group Inc. v. New England Insurance Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Village of Sylvan Beach v. Travelers Indemnity Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). When an insurance contract's provisions "are unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Insurance Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Plaintiff does not argue that the PRE-EXISTING DAMAGE EXCLUSION is unclear or ambiguous. In any event, the testimony of Defendant's underwriter would be irrelevant to how the clause is to be interpreted. *See Alfin, Inc. v. Pac. Ins. Co.*, 735 F. Supp. 115, 120 (S.D.N.Y. 1990) (finding testimony of defendant's underwriters regarding their understanding of meaning of policy exclusion to be "legally irrelevant"). Given the PRE-EXISTING DAMAGE EXCLUSION, the Court finds that Mt. Hawley's decision to insure the Property despite any pre-existing damage is not relevant to any claim or defense in this action.

With respect to the other deposition topics identified by Plaintiff in its reply, the Court finds that, on the current record, deposition testimony from the underwriter on these topics is not proportional to the needs of the case. For example, with respect to the valuation of the

---

[7] "Insurance underwriters evaluate insurance applications and decide whether to approve them." U.S. Bureau of Labor Statistics, Occupational Outlook Handbook, Insurance Underwriters, "What Insurance Underwriters Do," available at https://perma.cc/87HL-PVXR (accessed on Mar. 2, 2026).

Property, the Court finds that testimony of the underwriter would be cumulative of documents in the underwriting file. Similarly, much of the information sought by Plaintiff, such as the names of witnesses who saw the Property or the authentication of documents, could be obtained through other less burdensome means. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (court shall "limit the frequency or extent of discovery" if "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also Powers v. Mem'l Sloan Kettering Cancer Ctr.*, No. 20-CV-02625 (LGS), 2020 WL 5968126, at *3 (S.D.N.Y. Oct. 8, 2020) (quashing deposition subpoena as cumulative and not proportional when information sought could be obtained through document requests and other depositions).

Finally, with respect to information obtained by Defendant's claims adjusters from the underwriting process, Defendant's counsel represented during the March 6, 2026 telephone conference that there were no communications between the underwriter and the claims adjusters. Again, the Court accepts the representations of counsel. *Cf. Clark v. Hanover Ins. Grp., Inc.*, No. 3:24-CV-00348 (SVN), 2025 WL 2159106, at *4 (D. Conn. July 30, 2025) (denying motion to compel production of documents based upon counsel's representation that items sought did not exist).

9

## CONCLUSION

For the reasons set forth above, Plaintiff's Letter Motion to compel (ECF No. 28) is DENIED.

**SO ORDERED.**

Dated:        New York, New York
              March 7, 2026

_____
STEWART D. AARON
United States Magistrate Judge

10